ANDREW A. WARTH (*pro hac vice pending*)
drew.warth@wallerlaw.com
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN  37219
Telephone:  (615) 244-6380
Facsimile:   (615) 244-6804

THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599

Attorneys for Plaintiff, MidlevelU, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MIDLEVELU, LLC, | ) Case No. 17-1573 |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) |
| vs. | ) DEMAND FOR JURY TRIAL |
| | ) |
| DOXIMITY, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## COMPLAINT

This is a civil complaint for copyright infringement, trademark infringement, and common law unfair competition filed by Plaintiff, MidlevelU, LLC ("MidlevelU") against a competing business, Doximity, Inc. ("Doximity").  MidlevelU is a long-standing resource for "Midlevels," such as nurse practitioners or NPs, who are licensed to provide a greater level of health care services than a registered nurse or RN.  Doximity is a company in the same space.  As discussed herein, Doximity tried to gain an upper hand on MidlevelU by scraping the original content MidlevelU authored and posting it in full on its own website behind a "members only" login area. This was copyright infringement, for which there is no viable defense.  Doximity also engaged in trademark infringement and unfair competition.

## PARTIES

1.      The Plaintiff is MidlevelU, a member-managed Tennessee Limited Liability Company, headquartered at 4601 Dakota Ave, Nashville, TN 37209.

2.      The Defendant is Doximity, Inc. a California corporation, headquartered at 60 East Third Avenue, San Mateo, CA 94401.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this case pursuant to the Copyright Act and the Lanham Act.  The Court has supplemental jurisdiction over any state law claims now or subsequently asserted in this case.

4.      Doximity is headquartered in this District, and therefore there is personal jurisdiction over Doximity in this Court.

5.      Venue is appropriate, as a substantial part of the events giving rise to the claims occurred in this District. Among other things, Doximity scraped content from MidlevelU from this District and engaged in trademark infringement and unfair competition against MidlevelU in this District.

///

///

///

COMPLAINT
Case No.

**INTRADISTRICT ASSIGNMENT**

6. This is an intellectual property action, and a civil action that arose in San Francisco County, and therefore, unless the Court Assignment Plan otherwise dictates, should be assigned to the San Francisco or Oakland Division.

**FACTUAL ALLEGATIONS**

7. Plaintiff MidlevelU has a website that provides articles, information, career advice, job postings and other helpful materials to nurse practitioners and those seeking to become nurse practitioners. It also offers a login area where members can create a profile, send messages to other members, post on a general message board viewable by all members, and view video content created and provided by MidlevelU.

8. Defendant Doximity is a competitor of MidlevelU and provides content on its website with similar themes to MidlevelU. MidlevelU and Doximity compete to be the source of career advice, job opportunities and other news for nurse practitioners, and they compete for the associated revenue. Just like MidlevelU, Doximity provides a login area for its members.

9. The individual primarily responsible for writing and posting original, creative content on the MidlevelU website is Erin Tolbert, the founder and director of MidlevelU and a family nurse practitioner in Nashville, Tennessee.

10. Ms. Tolbert founded MidlevelU in 2012. Since that time, she has invested countless hours and significant sums of money developing and maintaining the MidlevelU brand. In her capacity as Director of MidlevelU, she has made dozens of appearances on CNN, Fox News, and other media outlets to develop MidlevelU's well-deserved reputation as an authoritative source of information and healthcare news for nurse practitioners. Given that she lives in Nashville, Tennessee, the time, money, and effort to fly to New York and Washington D.C. for these appearances was substantial. Attached as **Exhibit A** hereto are screenshots of a handful of Ms. Tolbert's media appearances.

11. Ms. Tolbert and her staff have written thousands of articles, posted as blog entries on the MidlevelU website; these blog entries are original creations of MidlevelU and are protected from infringement by federal copyright law.

COMPLAINT
Case No.

12.    MidlevelU has used the MidlevelU name and logo (see attached **Exhibit B**) as marks in conjunction with the provision of trusted information, advice, and career services for nurse practitioners since 2012.

13.    Prior to Doximity contacting Ms. Tolbert last year as discussed below, Doximity and MidlevelU were competitors with no business relationship or agreements between them.  That remains the case to this day.

14.    In May 2016, Ms. Tolbert, in her capacity as Director of MidlevelU, was contacted by Doximity representatives supposedly about potential collaboration ideas. Ms. Tolbert ignored these requests until Doximity asked about paying money to MidlevelU to advertise on MidlevelU's website.

15.    In June 2016, Ms. Tolbert spoke with Doximity representatives by phone in a single conversation, which Ms. Tolbert thought was to discuss potential collaboration ideas.

16.    It became clear to Ms. Tolbert in the course of that conversation that Doximity did not have interest in advertising on MidlevelU's site, but rather Doximity representatives were attempting to "pump" Ms. Tolbert for information about what tools she had used to make her website such a successful and valuable resource for Nurse Practitioners – and to attract so many regular monthly readers and have such a known brand in the space.

17.    After the phone call, Ms. Tolbert emailed the advertising rates for MidlevelU. No one from Doximity responded to that email or contacted Ms. Tolbert to discuss advertising on the MidlevelU site or anything else.  This is entirely consistent with the premise that Doximity was attempting to pump MidlevelU for information and was not actually interested in collaboration or paying MidlevelU for any of MidlevelU's products, services, or intellectual property.

18.    Doximity never asked for permission, and no one from MidlevelU ever gave permission, for Doximity to use MidlevelU's content, trademarks, trade dress or anything else owned by MidlevelU on the Doximity website.

19.    Ms. Tolbert has an account with Doximity, which allows her to view content that is "members-only" and only visible to those with a Doximity member username and password.

*///*

COMPLAINT
Case No.

20.    On Sunday February 5, 2017, Ms. Tolbert was using the "members only" section of the Doximity web site and she noticed a peculiar similarity between an article on the Doximity website and an article she had written and posted for MidlevelU.

21.    Ms. Tolbert determined that the article was indeed an article she had written and posted for MidlevelU.

22.    Spending more time on the Doximity website, in the "members only" section, revealed something truly astounding: Doximity had taken *One Hundred and Thirty-Three MidlevelU Articles and posted them on the Doximity website, all without permission from MidlevelU.*

23.    The only plausible way for Doximity to take these articles from MidlevelU and post them on the Doximity website was to manually copy the articles from the MidlevelU site to the Doximity site.

24.    The entire MidlevelU articles were simply copied word for word.  In some cases, Doximity made adjustments to the title of an article so that it would look better in the spacing Doximity's website gives for titles. Attached hereto as **Exhibit C** and incorporated herein by reference is a spreadsheet showing the names of the articles as they appeared on the MidlevelU and Doximity websites.   Upon information and belief, in every case, the text of the article was simply copied word for word.  As the Court can see, the spreadsheet also contains the copyright application numbers associated with the copyright registrations that have been filed for, satisfying the registration requirement under Ninth Circuit precedent.

25.    In addition to taking the content, the byline of the MidlevelU articles that were taken and posted on the Doximity website say things like "MU - [The Date] - Original Article" or "MidlevelU - [The Date] - Original Article," suggesting to the reader that MidlevelU is an entity that works for or otherwise endorses Doximity, which of course is not true.  Attached as **Exhibit D** and incorporated herein by reference are a series of screenshots with captions that show some examples of the content discussed above and some additional explanatory material.

///

///

26.    Additionally when the MidlevelU articles that were posted on Doximity were shared on Doximity's Facebook page or shared on Twitter, it appeared as if the content was exclusively controlled by Doximity.  Attached as **Exhibit E** and incorporated herein by reference are examples of misattribution as to ownership made on social media, that is, Doximity's conduct resulting in MidlevelU's content appearing to be owned by Doximity on social media, creating confusion in the marketplace.

27.    Doximity's conduct created confusion about the association of MidlevelU and Doximity.  Moreover, the posting of the articles by Doximity reduced traffic to the MidlevelU site, because it made the MidlevelU articles appear "lower down" on the Google search page than they would have without the copying.  This reduction in traffic has caused MidlevelU damages.

## <u>COUNT I - COPYRIGHT INFRINGMENT -- 17 U.S.C. § 101 *et seq.*</u>

28.    The previous allegations are incorporated herein by reference as if fully restated.

29.    MidlevelU owns the exclusive, valid copyright of each article written by MidlevelU representatives and posted on the MidlevelU website.  This includes the 133 articles discussed above.

30.    Copyright registration applications for these articles have been filed with the United States copyright office.  *See* **Exhibit C.**

31.    When Doximity copied these 133 MidlevelU copyrighted articles and posted them on the MidlevelU website it copied all the constituent elements of the copyrighted works that are material.

32.    Doximity copied those articles, word for word, and posted them on its website, without any permission or license to do so.

33.    Doximity thus infringed on MidlevelU's copyrights in the 133 articles.

34.    As demonstrated above, these acts of infringement were volitional, demonstrated by the fact that Doximity non-substantially tweaked the titles to certain articles.  The acts of infringement were intentional and willful.

35.    MidlevelU is entitled to statutory damages, treble damages, attorney's fees and actual damages in an amount to be determined at trial for Doximity's copyright infringement.

## COUNT II - TRADEMARK INFRINGEMENT UNDER LANHAM ACT § 43(a)

36.    The previous allegations are incorporated herein by reference as if fully restated.

37.    MidlevelU's name and logo are distinctive and valid trademarks that are owned by MidlevelU.

38.    MidlevelU's trademark rights vested as soon as MidlevelU began using the mark in commerce in 2012, and predate Doximity's improper use of the mark by several years.

39.    Without any permission or license to do so, Doximity has used the MidlevelU name and logo in this District and throughout the world.

40.    When Doximity copied MidlevelU's content and posted it on the Doximity website it also used the distinctive MidlevelU mark and name.

41.    This copying was designed to create the public belief that the mark's owner (MidlevelU) sponsors or otherwise approves of the use of the trademark by Doximity, which is, of course, not so.

42.    Doximity's conduct likely caused confusion, mistake, and deception of customers as to an affiliation between Doximity and MidlevelU.

43.    At the time it used the MidlevelU name and mark, Doximity had actual notice of MidlevelU's exclusive rights in his marks.

44.    This was infringement of MidlevelU's mark, in violation of Section 1125 of the Lanham Act.

45.    The use of the MidlevelU mark and logo was willful, in bad faith, and with full knowledge that Doximity had no right, license, consent, or authority to use MidlevelU's marks or any other designation similar thereto.

46.    The conduct of Doximity was intended to reap the benefit of the goodwill that MidlevelU has created in its marks and logo and constitutes an infringement of MidlevelU's trademarks.

///

///

///

-6-

COMPLAINT
Case No.

## COUNT III - COMMON LAW UNFAIR COMPETITION

47.     The previous allegations are incorporated herein by reference as if fully restated.

48.     Doximity's conduct created likely confusion, mistake, and/or deception of customers as to an affiliation between MidlevelU and Doximity the false impression that the goods and services provided by Doximity are sponsored or affiliated with MidlevelU.

49.     The conduct of Doximity constitutes unfair competition in violation of the common law of the state of California and other states.

50.     The conduct of Doximity was willful, in bad faith, and with full knowledge that Doximity had no right, license or authority to use the MidlevelU mark and logo.

## COUNT IV - CALIFORNIA UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

51.     The previous allegations are incorporated herein by reference as if fully restated.

52.     California Business and Professions Code § 17200, et seq. prohibits unfair competition, including unlawful, unfair, or fraudulent business acts and practices.

53.     The Doximity conduct described herein, from misrepresenting the true nature of the initial conversation with Ms. Tolbert, through exploiting MidlevelU's intellectual property for its own gain constitutes conduct that violates California Business and Professions Code § 17200, et seq.

54.     The wrongful acts of Doximity proximately caused, and will continue to cause, substantial actual injury in fact to MidlevelU including confusion of potential customers, injury to reputation, and diminution of the MidlevelU's common law trademarks and brand value.

## JURY DEMAND

MidlevelU prays for a jury on all issues of law and fact so triable.

## PRAYER FOR RELIEF

In light of the foregoing, MidlevelU prays for the following relief:

1.     Service of process timely issue.

2.     MidlevelU have access to full and fair discovery of Doximity's conduct as permitted by Federal Rule of Civil Procedure 26;

-7-

COMPLAINT
Case No.

3.     That MidlevelU be afforded full and fair opportunity to prove its actual damages, including the damage to brand and the damage cause by the reduction in web traffic;

4.     For the copyright, trademark infringement and unfair competition, statutory damages and attorney's fees for the copyright and trademark infringement in the maximum amount permitted by law;

5.     Any and all necessary and proper relief as justice requires.


Dated:  March 23, 2017                    DAVIS WRIGHT TREMAINE LLP
                                          THOMAS R. BURKE


                                          By: /s/ Thomas R. Burke
                                              Thomas R. Burke
                                              Attorney for Plaintiff, MidlevelU, LLC


Dated:  March 23, 2017                    WALLER LANSDEN DORTCH & DAVIS, LLP
                                          DREW WARTH (*pro hac vice pending*)


                                          By: /s/ Drew Warth
                                              Andrew A. Warth
                                              Attorney for Plaintiff, MidlevelU, LLC

-8-